KIRBY & KIRBY LLP
Michael L. Kirby, Esq. (SBN 50895)
    mike@kirbyandkirbylaw.com
501 West Broadway, Suite 1720
San Diego, California  92101
Telephone: 619.487.1500
Facsimile: 619.501.5733

Attorney for Plaintiff

# UNITED STATES DISTRICT COURT

# FOR THE SOUTHERN DISTRICT OF CALIFORNIA

MICHELLE LEE,

　　　　　Plaintiff

　　v.

UNITED STATES DEPARTMENT OF THE NAVY,

　　　　　Defendant.

Case No.:  **'23CV0576 W    MSB**

**COMPLAINT FOR DECLARATORY RELIEF**

**1.**　　Plaintiff Michelle Lee brings this action for declaratory relief against the Defendant, the United States Department of the Navy (hereinafter "U.S. Navy").  This action is proper in this Court because the declaratory relief requested herein involves the interpretation and enforcement of a federal statute, and declaratory relief is necessary to prevent Defendant from denying Plaintiff's rights, after Plaintiff has exhausted all of her administrative remedies.

**2.**　　This action arises under the Richard Stayskal Medical Accountability Act (H.R. 2422, S. 2451), which was eventually enacted by Congress in 2019 as part of the National Defense Authorization Act for fiscal year 2020. The Medical Accountability Act (hereinafter referred to as the "Military Medical Malpractice Act") eventually became a federal statute set forth in 10 U.S.C. § 2733a.

**3.** The Military Medical Malpractice Act was named for Sergeant Richard Stayskal, a serviceman who was injured by medical malpractice of military healthcare providers in a noncombat situation and he had no effective remedy prior to the passage of the new federal statute.

**4.** One of the sponsors in Congress for the Military Medical Malpractice Act, Rep. Jackie Speier, stated in Congress in urging its passage that "Servicemembers' spouses and families, civilian Federal employees, and even convicted prisoners have the right to sue for negligence, but not our servicemembers." Ms. Speier correctly pointed out that convicted felons in federal incarcerations had a right to sue for damages caused by government healthcare providers' medical malpractice, but active duty U. S. military members had no such rights. She also noted that under the draconian prior law for medical malpractice involving service members: "It means there are no consequences for botched procedures and few incentives for the military's medical providers to improve care."

**5.** Rep. Speier also stated that the Military Medical Malpractice Act was "setting aside $400 million over 10 years to provide justice and compensation for malpractice performed in noncombat settings." While those were laudable objectives in enacting the Military Medical Malpractice Act, the objective of setting aside $400 million "to provide justice and compensation for malpractice performed in noncombat situations" is not what is happening for victims of military medical malpractice.

**6.** The system created by Congress with the Military Medical Malpractice Act is essentially a rigged system with no effective redress for victims, no matter how egregious the medical malpractice was, or how serious the resulting injuries were, or how substantial the fair monetary compensation should be for the malpractice victims and their families.

**7.** The system created by the U.S. Navy under the Military Medical Malpractice Act has the U.S. Navy personnel deciding if the U.S. Navy's own healthcare providers committed medical malpractice and then deciding what fair compensation

would be for the victims, with no remedies whatsoever, regardless of how erroneous the U.S. Navy's determinations are. There are no stated objective criteria and there are no effective remedies under the Military Medical Malpractice Act.

8. This system under the Military Medical Malpractice Act is like having a victim of medical malpractice by a private hospital or physician in California having to ask that hospital or physician if malpractice was committed on him or her and then having the hospital or physician determine "fair compensation," with no further rights or remedies. There is nothing objective or effective about that rigged system.

9. Another proponent in Congress of the Military Medical Malpractice Act, Rep. Filemon Vela stated: "I was particularly pleased that the legislation included . . . **changes to allow access to justice for military members and their families harmed by medical malpractice**." [Emphasis added.]

10. That policy objective is an important statement because it recognized that the victims of medical malpractice by military physicians and healthcare providers included not only the injured service member, but the spouses of service members ("and their families harmed by medical malpractice.") Spouses of injured service members also suffer damages as a result of such noncombat medical malpractice in military hospitals such as occurred with Plaintiff's spouse.

11. However, as explained in this Complaint, the Military Medical Malpractice Act is not being administered by the Department of the U.S. Navy in a manner "to allow access to justice for military members **and their families harmed by medical malpractice**." On the contrary, the U.S. Navy takes the position that clearly injured spouses and family members have no rights to any compensation.

12. Plaintiff is a spouse of Kenneth L. Lee, a decorated combat veteran who was seriously injured by medical malpractice which occurred in the U.S. Balboa Naval Hospital in San Diego, California on September 17, 2018. Some of the details of that gross medical malpractice are described below. Kenneth L. Lee's injuries and damages from the medical malpractice of the U. S. Navy are substantial and permanent, but he

1 has his own separate claim which is not at issue in this action.

2     **13.** It has been established California law for almost 50 years since the California Supreme Court's 1974 decision in *Rodriguez v. Bethlehem Steel Corp.* (1974) 12 Cal.3rd 382, 408, when the Court ruled: "We . . . declare that in California each spouse has a cause of action for loss of consortium, as defined herein, caused by the negligent or intentional injury to the other spouse by a third party."

    **14.** The cause of action for loss of consortium is so well established in California that it appears in the standard California Civil Jury Instructions (CACI) No. 3920 "Loss of Consortium (Noneconomic damages)", which sets forth the well established elements for a claim for loss of consortium.

    **15.** The California elements for a spouse's damages under California law resulting from a loss of consortium are set forth in CACI 3920 and include: "the loss of the spouse's companionship and services, including 1. The loss of love, companionship, comfort, care, assistance, protection, affection, society, and moral support; and 2. The loss of the enjoyment of sexual relations. . . ."

    **16.** To prevail on her claim for loss of consortium Plaintiff must prove these 4 elements: (1) Plaintiff had a valid marriage with the person injured at the time of the injury; (2) a tortious injury to the Plaintiff's spouse; (3) a loss of consortium suffered by the Plaintiff; and (4) the loss was proximately caused by the defendant's negligence. Plaintiff clearly satisfies each of the required elements for a claim for loss of consortium.

    **17.** This is an action for declaratory relief which presents an actual case and controversy, and presents a pure question of law. That question is whether the spouse of an injured service person, whose injuries resulted from medical malpractice of military healthcare providers in a noncombat situation in California, has a separate cause of action for loss of consortium under the Military Medical Malpractice Act. It cannot be disputed that such a cause of action exists under California law, and it is also recognized under the Federal Torts Claims Act.

///

4

**18.** Declaratory relief is necessary and appropriate because the U.S. Navy personnel administering claims under the Military Medical Malpractice have completely and arbitrarily rejected Plaintiff's submission of her separate claim under the Military Medical Malpractice Act for her obvious and substantial claim for loss of consortium due the negligent medical treatment of her spouse in a military hospital facility in San Diego. As described below, Plaintiff has clearly exhausted all administrative remedies before filing this action.

**19.** It is important to be clear that Plaintiff does not seek by this civil action to have this Court decide the merit or value of her substantial claim for loss of consortium, nor does she seek any award of damages in this action. Plaintiff only seeks a judicial declaration that she is entitled to pursue her claim for loss of consortium under the Military Medical Malpractice Act, and that Defendant must allow her to do so.

**20.** Defendant has improperly determined that, as a matter of law, Plaintiff cannot even file and pursue a claim for loss of consortium under the Military Medical Malpractice Act. Plaintiff simply seeks declaratory relief that she is entitled, as the spouse of an injured service member whose injuries resulted from medical malpractice by military medical personnel in a noncombat situation while on active duty in San Diego, to file and pursue such a claim against the Defendant U.S. Navy.

## THE PARTIES

**21.** Plaintiff Michelle Lee is the wife of Kenneth L. Lee, and they have continuously been husband and wife since December 11, 2010. Plaintiff and her husband reside in San Diego, California and resided here when the medical malpractice causing injuries to U.S. Navy Master Chief Kenneth L. Lee occurred at Balboa Naval Hospital in San Diego on September 17, 2018 while he was on active duty in the U.S. Navy.

**22.** Defendant U.S. Navy is a branch of the government of the United States and Kenneth L. Lee was on active duty with the U.S. Navy when the medical malpractice occurred which caused substantial damages to him and to his spouse.

## JURISDICTION AND VENUE

**23.** This Court has subject matter jurisdiction pursuant to the Federal Declaratory Judgment Act, 28 U.S.C. sections 2201-2202, to hear and grant declaratory relief involving a branch of the U.S. military (the U. S. Navy here) and to interpret a federal statute (10 U.S. Code section 2733a) which is involved here.

**24.** Venue is proper in this District because the Plaintiff is a resident of this District, the medical malpractice giving rise to this action occurred at the Balboa Naval Hospital located in San Diego, and Plaintiff's injuries and damages were suffered in this District, giving rise to her claim for loss of consortium.

## PLAINTIFF HAS EXHAUSTED HER ADMINISTRATIVE REMEDIES

**25.** On September 16, 2020, Plaintiff timely submitted her claim for loss of consortium to the U.S. Navy on OMB Form 1105-0008 [CLAIM FOR DAMAGE, INJURY, OR DEATH], which incorporated the Separate Claim of her husband, Kenneth L. Lee (US NAVY File No. J201712). Plaintiff's Claim was assigned US NAVY File No. J201715. A true copy of Plaintiff's original claim for loss of consortium is attached hereto as **Exhibit 1**.

**26.** More than a year later, on October 12, 2021, Plaintiff's counsel received a letter dated October 5, 2021 in which the US Navy stated it had made an Initial Determination denying Plaintiff's claim, and a true copy of that letter is attached hereto as **Exhibit 2**. That denial letter asserted that the statute (10 U. S. C. section 2733a) "does not permit derivative claims. Accordingly, your client is not a proper claimant and, therefore, the claim is denied." That October 5, 2021 letter advised Plaintiff that she had a right to appeal the Initial Determination by the US Navy denying her claim.

**27.** On December 3, 2021, Plaintiff filed her Notice of Appeal of Initial Determination with the US Navy, a true copy of which is attached hereto as **Exhibit 3**.

**28.** On April 7, 2022, Plaintiff's counsel received a letter dated April 1, 2022 from the US Navy, a true copy of which is attached hereto as **Exhibit 4**, in which the US Navy gave written notice to Plaintiff that her appeal for the right to pursue her claim

1  for loss of consortium was rejected, citing the same reasons set forth in attached **Exhibit 2**, and further stating that "this letter is the Final Determination of the appeal."

29. Plaintiff was waiting to see if her husband's separate claim (US Navy Claim # J201712) might be resolved before filing this action, but that claim has been on appeal since June 23, 2022 (over 9 months) with no decision by the U.S. Navy to date.

30. Plaintiff has clearly exhausted all her administrative remedies before filing this action.

31. The clear medical malpractice which led to Michelle Lee filing a claim under the Military Medical Malpractice Act and the Navy's rejection of her claim without even a consideration of the merits of her claim is described above. Again, Plaintiff is not seeking any declaratory relief in this action regarding the separate claim of her husband.

**THE NAVY'S MEDICAL MALPRACTICE WHICH LED TO THIS ACTION**

32. While cases of medical malpractice can sometimes be complicated and disputed, the U.S. Navy's medical malpractice in its treatment of Master Chief Kenneth Lee presents no such complicated circumstances. The U.S. Navy's negligent medical care of Kenneth Lee is quite simple and involves undisputed gross medical negligence where the conduct and failures of the U.S. Navy's medical providers can never be justified or excused.

33. Master Chief Lee, a decorated 24-year U.S. Navy veteran of 5 separate dangerous combat tours in Afghanistan and Iraq, went into the Balboa Naval Hospital in San Diego on September 17, 2018 for a routine medical treatment on his knee, a simple procedure he had previously undergone without incident.

34. The U.S. Navy treating physician ordered a standard injection of 10 mg of ephedrine for the patient, Plaintiff's spouse. However, as admitted by the U.S. Navy's own physicians and medical records, the administering nurse mistakenly injected Kenneth Lee with 200 mcg of epinephrine (a different and dangerous drug), not 10 mg of ephedrine. That gross error caused the patient to immediately suffer a heart attack and

this overdose of the wrong medicine could have easily killed Kenneth Lee.

35. There is overwhelming and compelling "documentary evidence" that demonstrates beyond dispute the U.S. Navy's inexcusable negligence and medical malpractice on September 17, 2018. Predictably, the consequences of this gross medical negligence caused Master Chief Lee extremely serious and permanent physiological and emotional damages which continue to this day, and destroyed his planned 30 year career in the Navy. Through no fault of his own, Master Chief Lee was forced out of the U.S. Navy on April 1, 2020, but the U. S. Navy falsely contends the events of September 17, 2018 had no impact on his involuntary retirement.

36. At the time of his involuntary retirement, Master Chief Lee had faithfully and honorably served his country for 24+ years, in the following positions/assignments: (i) Master EOD Technician for 13 years; (ii) 717B Small Arms Marksmanship Instructor for 10 plus years; and (iii) Ammunition Inventory Management Specialist for over 13 years.

37. More importantly, Master Chief Lee's exemplary military service included five separate highly dangerous combat tours in Afghanistan and Iraq in service to his country, and being selected for critical Secret Service assignments to protect 4 different U. S. Presidents, and other dignitaries and world leaders.

38. Yet, Master Chief Lee's distinguished and decorated military career came to an abrupt end, not because of his previous combat injuries but because the U.S. Navy committed inexcusable negligence and medical malpractice while rendering what should have been simple medical care to him on September 17, 2018. Despite the undisputed evidence of the U. S. Navy administering the wrong drug and the wrong dosage on September 17, 2018 that caused an immediate heart attack, the U.S. Navy denies that Master Chief Lee was a victim of medical malpractice by the U. S. Navy. This is what happens when a System is created that lets the tortfeasors decide if they did anything wrong.

///

{K&K02255768 2}

**39.** Thus far, Kenneth Lee's psychological injuries have prevented him from resuming the treatments and procedures. His *feelings of terror* are very real, as is the severe and permanent nature of his ongoing emotional distress, including but not limited to, uncontrollable physical manifestations of worry, anxiety, stress, nightmares, panic attacks, and PTSD, and he has been so evaluated by experts who are experienced n dealing with servicemembers. Master Chief Lee's ongoing psychological and emotional injuries **(i)** are very real, quite severe and most-likely permanent; **(ii)** were caused by the negligent medical malpractice of the U.S. Navy and/or medical personnel acting on its behalf; and **(iii)** are clearly compensable. The same thing can be proven by Plaintiff in her separate claim for loss of consortium.

**40.** Master Chief Lee checked in to Balboa Naval Hospital around 8:00 a.m. on September 17, 2018 and was prepped for the scheduled procedure on his left knee. His treating physician, Dr. Robert Hackworth, an anesthesiologist and specialist in the field of Pain Medicine, ordered his medical staff to administer 10 mg of Ephedrine directly into his IV port prior to commencing the procedure. Master Chief Lee had received that same dose of Ephedrine on prior occasions when he underwent PRP therapy and AmnioFix, without any complications or side effects.

**41.** However, as described above, Master Chief Lee did not receive 10 mg of Ephedrine that day, as ordered by Dr. Hackworth. Instead, the registered nurse assisting Dr. Hackworth erroneously injected a potentially lethal dose of **Epinephrine** (Adrenalin®) into Master Chief Lee's IV port. Epinephrine has been designated as a *high alert medication* by the Institute for Safe Medication Practices (ISMP), which are drugs that bear a heightened risk of causing significant patient harm when they are erroneously administered. [www.ivtnetwork.com, March 25, 2020]

**42.** When Master Chief Lee woke up on September 17, 2018, his 42nd birthday, he looked forward to celebrating the day with his wife Michelle Lee, and their two children, Aaron and Scarlett. Instead, he spent the night in the cardiac unit at Balboa Naval Hospital, recovering from what could have been a fatal dose of Epinephrine. In

9

this country, no American service member should ever have to endure what Master Chief Lee experienced that fateful morning at Balboa Naval Hospital and in the days, weeks, months and years to follow.

43. Moments after being wheeled into treatment room, Master Chief Lee was erroneously injected with a potentially lethal dose of Epinephrine, instead of the 10 mg of Ephedrine ordered by Dr. Hackworth. He immediately experienced severe adverse reactions from the overdose, including excruciating chest and head pain. He could not breathe and thought he was dying. He then passed out. Although he did not know it at the time, in a split second, Master Chief Lee's career as a distinguished and decorated member of the U.S. Navy was over, through no fault on his part, and not because of any combat injuries.

44. Simply stated, but for the negligence and wrongful conduct of the Navy and its medical personnel, Master Chief Lee would have continued his career as a Naval Explosive Ordnance Disposal Master Chief Petty Officer, or as a Command Master Chief ("CMC"), for which he was being groomed, with the option of retiring at 30 years. After such a distinguished career, and given his specialized skills and training, Master Chief Lee could have easily secured a non-combat position in the highly specialized field of Explosive Disposal.

**THE RIGHT TO SUE THE FEDERAL GOVERMNNENT OR ITS AGENCIES FOR LOSS OF CONSORTIUM HAS LONG BEEN ESTABLISHED**

45. Established federal case law recognizes the right of a spouse of an injured person to pursue a claim for loss of consortium under the Federal Tort Claims Act ("FTCA"). In a case before the U.S. District of Minnesota, a husband and wife sued under the FTCA and the District Court found that the wife should be compensated or her loss of services of consortium. See, *Ottem by Ottem v. U.S.* (D. Minn. 1984) 594 F.Supp. 283, 290 ("The court finds that she should be awarded $100,000 to compensate her for her loss of services and consortium").

/ / /

10

**46.** In a case in the Central District of California, the Court explained that state tort claims are cognizable under the FTCA and noted that California has held that loss of consortium is an independent tort. However, the claim for loss of consortium failed in that case because the plaintiff was not the spouse of the injured person, and California loss of consortium claims may only be brought by the injured party's spouse. See *Bosworth v. United States* (C.D. Cal., Dec. 9, 2016, No. CV 14-0498 DMG (SS)) 2016 WL 9651128, at *14.

**47.** This Court is not being asked to determine or value Plaintiff's loss of consortium claim due to the injuries to her spouse for the clear medical malpractice of the U. S. Navy.

**48.** But if the Military Medical Malpractice Act is truly enacted to provide fair compensation for injured service members and their spouses, Plaintiff is entitled to pursue that claim.

## PRAYER FOR RELIEF

Plaintiff requests that the Court enter judgment against the U. S. Navy and grant the following relief:

A. Grant declaratory relief in favor for Plaintiff as requested herein,

B. Award Plaintiff her costs; and

C. Grant such other relief as the Court deems proper.

Dated: March 31, 2023                                **KIRBY & KIRBY LLP**

By: *Michael L. Kirby (s)*
Michael L. Kirby
Attorneys for Plaintiff