UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| MICHELLE LEE,<br><br>　　　　　　Plaintiff,<br><br>v.<br><br>UNITED STATES DEPARTMENT OF THE NAVY,<br><br>　　　　　　Defendant. | Case No.: 3:23-cv-0576-W-MSB<br><br>**ORDER GRANTING MOTION TO DISMISS [DOC. 6]** |

  Pending before the Court is the United States Department of the Navy's ("Defendant" or "Navy") motion to dismiss ([Doc. 6], "Motion") this case for lack of subject matter jurisdiction under Fed. R. Civ. P. 12(b)(1) and for failure to state a claim upon which relief can be granted under Fed. R. Civ. P. 12(b)(6).  (*Motion* at 1.)  Plaintiff

Michelle Lee ("Plaintiff") opposes the Motion. ([Doc. 7], "Opposition".) Defendant has replied. ([Doc. 8.], "Reply".)

The Court decides the matter on the papers submitted and without oral argument. *See* Civ. L.R. 7.1(d)(1). For the following reasons, the Court **GRANTS** the Motion without leave to amend and **ORDERS** the case **DISMISSED**.

I. **RELEVANT BACKGROUND**

Plaintiff is the civilian spouse of Kenneth L. Lee ("Mr. Lee"). (*Complaint* at ¶ 21.) The Complaint alleges that in 2018, while an active-duty member of the U.S. Navy, Mr. Lee was the victim of medical malpractice at the hands of Navy medical personnel at Balboa Naval Hospital in San Diego, California. (*Id*. at ¶¶ 21, 39, 44.) Specifically, Plaintiff asserts that Mr. Lee suffered a heart attack after a Navy nurse "mistakenly injected" him with *epinephrine* instead of the *ephedrine* ordered by a Navy physician. (*Id*. at ¶ 34.)

While Mr. Lee fortunately survived the heart attack, the Complaints alleges he suffered "serious and permanent physiological and emotional damages which continue to this day." (*Id*. at ¶ 35.) For these alleged injures, Plaintiff claims Mr. Lee filed an administrative claim with the Navy under the Military Medical Malpractice Act ("MMMA") on September 16, 2020. (*Opposition* at 6.) That same day, Plaintiff alleges that she too submitted her own administrative claim to the Navy—under a loss of consortium theory resulting from Mr. Lee's injuries—under the MMMA. (*Complaint* at ¶¶ 24-25.) The Complaint alleges that the Navy ultimately denied Plaintiff's administrative claim, reasoning that she (the civilian spouse of the serviceman who suffered the alleged injury) was "not a proper claimant" under the MMMA and that the statue "does not permit derivative claims" like loss of consortium. ([Doc. 1-2], "Denial Letter" at 6.)

Plaintiff has now filed the instant lawsuit, not seeking judicial adjudication of her loss of consortium claim, but instead seeking a declaratory judgment that "the [civilian]

spouse of an injured service member whose injury resulted from medical malpractice by military medical personnel" may "file and pursue a claim for loss of consortium under the Military Medical Malpractice Act." (*Complaint* at ¶ 20.)  In turn, Defendant contends that this case must be dismissed because: (1) the United States has not waived sovereign immunity as to this declaratory judgment suit; (2) Congress has explicitly precluded judicial review of administrative decisions made by the Secretary of Defense under the MMMA; and (3) Defendant correctly interpreted the MMMA as not permitting the civilian spouses of injured servicemembers to file their own administrative claims for injuries like loss of consortium. (*Motion* at 2.)

## II.  LEGAL STANDARD

Federal Rule of Civil Procedure 12(b)(1) allows a defendant to file a motion to dismiss for "lack of subject matter jurisdiction." FED. R. CIV. P. 12(b)(1).  While a claim of sovereign immunity is technically not a pure jurisdictional issue, it is "quasi jurisdictional" and a "Rule 12(b)(1) [motion] is still the proper vehicle for invoking sovereign immunity from suit." *Pistor v. Garcia*, 791 F.3d 1104, 1111 (9th Cir. 2015); *see Tobar v. United States*, 639 F.3d 1191, 1194 (9th Cir. 2011). When evaluating sovereign immunity via a Rule 12(b)(1) motion, the Court must start with the presumption that the United States is immune from suit, and it is Plaintiff's burden to show that the United States has expressly consented to be sued in this way. *See Kokkonen v. Guardian Life Ins. Co. of America*, 511 U.S. 375, 377 (1994); *Shalaby v. Johnston*, 2023 WL 3047051, at *2 (N.D. Cal. Apr. 21, 2023).

## III.  DISCUSSION

It has long been understood that, as a default rule, the United States enjoys immunity from suit. *E.g.*, *Alden v. Maine*, 527 U.S. 706, 712-31 (1999) (explaining the history of sovereign immunity and its relationship to the Eleventh

Amendment). This presumption of sovereign immunity can only be overcome by Congressional waiver. *United States v. Mitchell*, 463 U.S. 206, 212 (1983) ("It is axiomatic that the United States may not be sued without its consent."); *Esquivel v. United States*, 21 F.4th 565, 572 (9th Cir. 2021) ("An action can be brought by a party against the United States only to the extent that the Federal Government waives its sovereign immunity."). Any such waiver must be express, as "[w]aivers of sovereign immunity are . . . 'construed strictly in favor of the sovereign.'" *United Aeronautical Corp. v. United States Air Force*, 80 F.4th 1017, 1029 (9th Cir. 2023) (quoting *McGuire v. United States*, 550 F.3d 903, 912 (9th Cir. 2008)).

In 1946, Congress enacted the Federal Tort Claims Act ("FTCA"), waiving the United States' "sovereign immunity for claims arising out of torts committed by federal employees." *Ali v. Fed. Bureau of Prisons*, 552 U.S. 214, 217-18 (2008) (citing 28 U.S.C. § 1346(b)(1)). However, in *Feres v. United States*, the Supreme Court held that the FTCA does *not* waive the United States' sovereign immunity "for injuries to servicemen where the injuries arise out of or are in the course of activity incident to service." 340 U.S. 135, 146 (1950). Under the *Feres* doctrine, courts barred members of the military from suing the United States for medical malpractice committed by military doctors, reasoning that servicemembers receiving medical care from military doctors was "an activity incident to service." *E.g.*, *Atkinson v. United States*, 825 F.2d 202, 206 (9th Cir. 1987) (barring medical malpractice claim of a pregnant servicewoman in a non-combat military hospital).

In 1956, Congress enacted the Military Claims Act ("MCA"), which allowed the Secretary of Defense to settle administrative claims brought against the United States for noncombat property damage or personal injury caused by members of the military or civilian employees of the Department of Defense "acting within the scope of [their] employment." 10 U.S.C. 2733 *et seq*. The MCA went on to provide that the Secretary's decision regarding an administrative claim brought under the MCA was "final" and not subject to judicial review. 10 U.S.C. 2735

("Notwithstanding any other provision of law, the settlement of a claim under section 2733 . . . is final and conclusive."); *see Hata v. United States*, 23 F.3d 230, 235 (9th Cir. 1994) ("Absent a cognizable constitutional claim, section 2735 of the Military Claims Act expressly precludes judicial review of administrative rulings by the Air Force."). However, the MCA still did not permit servicemembers to recover for medical malpractice committed by military doctors. 10 U.S.C. § 2733(b)(3) ("A claim may be allowed . . . only if . . . it is not for personal injury or death of such a member or civilian officer or employee whose injury or death is incident to his service."); *Hata v. United States*, 23 F.3d at 235 ("[T]he Air Force correctly relied on the *Feres* doctrine and determined that the MCA's incident to service exclusion barred the [servicemember's] family's claims.").

In 2019, Congress sought to alter this by amending the MCA with passage of the Military Medical Malpractice Act ("MMMA"). The MMMA provided a limited waiver of the United States' sovereign immunity by allowing "member[s] of the uniformed services" to file administrative-only medical malpractice claims with the Secretary of Defense. 10 U.S.C. § 2733a. Much like section 2733, the Secretary's decisions regarding administrative claims brought under section 2733a are "final" and not subject to judicial review. 10 U.S.C. 2735 ("Notwithstanding any other provision of law, the settlement of a claim under section . . . 2733a . . . is final and conclusive.").

### A.     The United States Has Not Waived Sovereign Immunity

The Court begins with the presumption that the United States is immune from suit and looks for an express act of Congress waiving sovereign immunity. *Lane v. Pena*, 518 U.S. 187, 192 (1996) ("A waiver of the Federal Government's sovereign immunity must be unequivocally expressed in statutory text").

Examining the Complaint, Plaintiff fails to specifically identify any express Congressional wavier of sovereign immunity that would allow *this* declaratory

judgment suit. (*See generally*, *Complaint*.) While the Complaint alleges that the Court has "subject matter jurisdiction pursuant to the Federal Declaratory Judgement Act . . . to interpret a federal statute (10 [U.S.C.] section 2773a [the MMMA])," the Declaratory Judgment Act (28 U.S.C §§ 2201) is not itself a waiver of sovereign immunity. *Brownell v. Ketcham Wire & Mfg. Co.*, 211 F.2d 121, 128 (9th Cir. 1954) ("the Declaratory Judgment Act . . . is not a consent of the United States to be sued, and merely grants an additional remedy in cases where jurisdiction already exists in the court."); *Shoshone-Bannock Tribes of Fort Hall Rsrv. v. United States*, 575 F. Supp. 3d 1245, 1255 (D. Idaho 2021) (quoting *B.R. MacKay & Sons, Inc. v. United States*, 633 F. Supp. 1290, 1295 (D. Utah 1986)) ("the Declaratory Judgment Act does not waive sovereign immunity. . . . Therefore, 'plaintiff[s] must look to the statute giving rise to the cause of action for such a waiver.'"). (*Complaint* at ¶ 23.)

Accordingly, Plaintiff must identify some other, underlying statute waving sovereign immunity. Other than the Declaratory Judgment Act, the Complaint only mentions two other statues: the MMMA and the FTCA. (*Complaint* at ¶¶ 23, 45.) Neither of which provide Plaintiff with the waiver needed for her Complaint to continue.

First, as discussed above regarding *Feres*, the FTCA plainly does not waive sovereign immunity for this kind of suit. Second, while the MMMA does provide a limited waiver of sovereign immunity, that waiver only allows "member[s] of the uniformed services" to file administrative claims with the Secretary of Defense—it does not allow civilian spouses of servicemembers to seek judicial review of the Secretary's decisions. *See* 10 U.S.C. § 2733a. In fact, Congress went out of its way to explicitly *preclude* judicial review of the Secretary's MMMA decisions. 10 U.S.C. 2735 ("Notwithstanding any other provision of law, the settlement of a claim under section . . . 2733a [the MMMA] . . . of this title is *final and conclusive*.") (emphasis added); *see Hata v. United States*, 23 F.3d at 235 ("Absent

a cognizable constitutional claim, section 2735 of the Military Claims Act expressly precludes judicial review of administrative rulings by the Air Force."). Thus, the MMMA also cannot be understood as an "unequivocally express" wavier of sovereign immunity.

Plaintiff raises for the first time in her Opposition that the Administrative Procedures Act ("APA") is also a relevant waiver of sovereign immunity. (*Opposition* at 10.) While it is true that "[a]dministrative decisions are presumptively subject to judicial review" under the Administrative Procedures Act ("APA"), Congress can overcome this presumption of reviewability by "'clear and convincing evidence' of a contrary legislative intent." *Hata v. United States*, 23 F.3d at 232 (9th Cir. 1994) (quoting *Block v. Cmty. Nutrition Inst.*, 467 U.S. 340, 349 (1984)). This occurs when, for example, Congress expressly "preclude[s] judicial review" of the relevant statute. *Block v. Cmty. Nutrition Inst.*, 467 U.S. at 345. As discussed above, Congress has expressly precluded judicial review of the Secretary's administrative decisions under the MMMA by declaring them "final and conclusive." 10 U.S.C. § 2375. As such, the APA is also not a waiver of sovereign immunity here.

Plaintiff also argues for the first time in her Opposition that she has also suffered a constitutional due process violation that is judicially reviewable. (*Opposition* at 11.) Relying on the language for *Hata* that "*[a]bsent a cognizable constitutional claim*, section 2735 of the Military Claims Act expressly precludes judicial review of administrative rulings by the Air Force," Plaintiff argues she may seek judicial review of the Secretary's decision, despite 10 U.S.C. § 2735, because she has a *constitutional* due process claim. 23 F.3d at 235 (emphasis added). (*Opposition* at 11.) However, the due process violation Plaintiff complains of in her Opposition—that the Navy "faile[ed] to timely process and permit Plaintiff's claim"—does not appear anywhere in the Complaint. (*Opposition* at 11; *see generally Complaint*.) All the Complaint alleges regarding

7

1  timing is that Plaintiff submitted her administrative claim to the Navy on
2  September 16, 2020, and received her denial letter just over a year later, on
3  October 12, 2021.  (*Complaint* at ¶¶ 25-26).  Plaintiff fails to articulate or support,
4  in either her Complaint or Opposition, how taking approximately 13 months to
5  adjudicate her claim amounts to a constitutional due process violation.  See

Furthermore, even if the Complaint contained sufficient allegations regarding timeliness (it does not), Plaintiff would still have to identify a protected property interest to state a valid procedural due process claim.  *See Hata v. United States*, 23 F.3d at 234 (emphasis added) ("*Even if Hata could establish a protected property interest in her MCA claim*, she has not shown that the administrative procedures applied by the Air Force were constitutionally insufficient.").  Under current Supreme Court precedent, a constitutionally protected property interest only exists where a person has "a legitimate claim of entitlement to" the government benefit at issue, not just "an abstract need or desire for it."  *Bd. of Regents of State Colleges v. Roth*, 408 U.S. 564, 577 (1972).  Here, it cannot be said that Plaintiff has a "legitimate claim of entitlement to" payment under the MMMA.  To the contrary, the MMMA simply states that "the Secretary *may* allow, settle, and pay a claim against the United States for" injuries to "member[s] of the unformed services" resulting from medical malpractice.  10 U.S.C. § 2733a (emphasis added).  At no point does the MMMA provide that the Secretary "must" or "shall" do much of anything, other than issue a written justification for denied claims.  10 U.S.C. § 2733a(e).  Since the MMMA does not actually confer any entitlement on "member[s] of the uniformed services"—let alone their civilian spouses—Plaintiff cannot be said to have the constitutionally protected property interest necessary to assert a procedural due process claim here.

Accordingly, the Motion must be **GRANTED** because Plaintiff has failed to identify any express waiver of sovereign immunity by the United States to this suit.[1]

### B.  Leave to Amend

Plaintiff asks the Court for leave to amend the Complaint if it grants the Motion.  (*Opposition* at 13.)  Federal Rule of Civil Procedure 15(a)(2) states that courts "should freely give leave [to amend] when justice so requires."  However, leave to amend is properly denied when "it is clear . . . that the complaint could not be saved by any amendment."  *Moss v. U.S. Secret Serv.*, 572 F.3d 962, 972 (9th Cir. 2009).

Here, leave to amend would indeed be futile.  As explained above, every avenue through which Plaintiff argues the United States waived sovereign immunity fails as a matter of law.  The Declaratory Judgment Act is not a waiver of sovereign immunity; the FTCA is not a wavier here under the *Feres* doctrine; instead of explicitly waiving sovereign immunity in the MMMA, Congress expressly foreclosed judicial review of the Secretary's MMMA decisions; and the civilian spouses of servicemembers do not have a property interest in payment under the MMMA for their own derivative claims.  There are no additional facts Plaintiff could plead that would change this.  And even if she could, Plaintiff certainly could not plead around the fact that the Secretary's decision is statutorily

---

[1] Since the Court holds that the United States has not waived its Sovereign Immunity to this suit, it need not proceed to the other arguments made by Defendant in its Motion.  However, the Court notes that even if the United States lacked sovereign immunity in this case, the Complaint would still fail because: (1) Congress has explicitly deprived the judiciary of jurisdiction to review the Secretary's MMMA decisions and (2) the plaint text of the MMMA provides that only "member[s] of the uniformed services" (or their "authorized representative" in the event that the "member" is "deceased or otherwise unable to file a claim due to incapacitation") may file a claim for injury caused by malpractice—not civilian spouses of servicemembers seeking payment for their own derivative claims.  *See* 10 U.S.C. §§ 2733a, 2735.

unreviewable by the judiciary and the plain language of the MMMA only allows "claim[s] . . . filed by the member of the uniformed services who is the subject of the medical malpractice claimed . . . ."

As such, the Court **DENIES** Plaintiff's request for leave to amend.

## IV. CONCLUSION & ORDER

For the foregoing reasons, the Court **GRANTS** the Motion [Doc. 6] without leave to amend and **ORDERS** the case **DISMISSED**.

**IT IS SO ORDERED.**

Dated: February 9, 2024

Hon. Thomas J. Whelan
United States District Judge